UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DAVID EARL WATTLETON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: 19-1893 (BAH) |
| | ) | Chief Judge Beryl A. Howell |
| | ) | |
| STEVEN T. MNUCHIN, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Plaintiff David Earl Wattleton filed this lawsuit seeking a refund of his federal income taxes, pursuant to 26 U.S.C. § 7422, which governs actions "for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected" or "of any sum alleged to have been excessive[.]" He sues the United States and Steven T. Mnuchin, in his official capacity as the United States Secretary of Treasury. Defendants now move for dismissal, pursuant to Federal Rule of Civil Procedure 12(b)(1), for lack of subject matter jurisdiction or, alternatively, to dismiss or transfer this matter for improper venue, pursuant to Federal Rule of Civil Procedure 12(b)(3) or 28 U.S.C. § 1406(a). Defs.' Mot. to Dismiss ("Defs.' MTD"), ECF No. 6; Defs.' Mem. Supp. of MTD ("Defs.' MTD Mem."), ECF No. 6-1. Plaintiff has partially opposed this motion, Pl.'s Opposition ("Pl.'s Opp'n"), ECF No. 8, and requested leave to substitute parties and amend the complaint, Combined Mot. for Leave to Amend ("Pl.'s Mot. to Amend"), ECF Nos. 9, 10.

1

For the reasons discussed below, defendants' motion to dismiss is granted as to all claims against the Secretary of Treasury. This motion is denied, without prejudice, as to the tax-refund claim against the United States, which claim will be transferred in the interest of justice to the United States District Court for the Northern District of Georgia. Plaintiff's motion for leave to amend and substitute is denied as moot.

## I.   BACKGROUND

In 1999, plaintiff was indicted in the United States District Court for the Northern District of Georgia for telephonic threats in violation of 18 U.S.C. § 844(e). *See United States v. Wattleton*, 110 F. Supp. 2d 1380, 1381 (2002), *aff'd*, 296 F.3d 1184 (11th Cir. 2002). He entered a plea of not guilty and filed a notice of an insanity defense pursuant to Fed. R. Crim. P. 12.2. *Wattleton,* 296 F.3d at 1187–88. Experts for both parties agreed that plaintiff was legally insane at the time of the alleged offense but that he was competent to stand trial. *Id.* at 1188. During the ensuing proceedings, plaintiff was diagnosed with delusional disorder, persecutory type, which his doctor described "as a major mental illness that's very severe." *Id.* at 1190–91. The jury ultimately rendered a verdict of not guilty only by reason of insanity on all four counts of the indictment. *Id.* at 1192.

A post-verdict hearing was held pursuant to 18 U.S.C. § 4243. *Id*. Following the hearing, the court determined that plaintiff should be committed to the custody of the Attorney General, pursuant to 18 U.S.C. § 4243(e), where he currently remains. *Id.* at 1194; *see* Pl.'s Opp'n ¶ II. Plaintiff attests that he is "currently [and] indefinitely committed" for psychiatric treatment and he is presently designated to the Federal Medical Center located in Rochester, Minnesota. Pl.'s Opp'n ¶ II.

Plaintiff filed this lawsuit in pursuit of a refund of his federal income tax for the taxable years of 1993 through 1999. Compl. ¶ 4. He indicates that he contacted the Internal Revenue Service ("IRS") in May of 2019 regarding this refund, but that his claim was denied. *Id.* at 1; *see* Pl.'s IRS Claim Request (undated and unsigned), Compl. Ex. 1, ECF No. 1-1. In the complaint, he alleges that he "suffers from a financial disability" that rendered him "unable to deal with financial matters from 1993 to 1999." *Id.* at introduction, p. 1. He additionally alleges that, from 1993 to date, his mental health conditions and resulting financial impairment have been continuous and permanent. Pl.'s Opp'n ¶ II; Pl.'s Resp. to Defs.' Reply, at 2–4, ECF No. 14. [1] In support, plaintiff states that his diagnosis of delusional disorder has been reaffirmed subsequent to his trial by his treating physician. Pl.'s Resp. at 2; *see* 6/25/01 BOP Mental Health Evaluation ("BOP Med. Eval."), attached as Ex. 1 to Pl.'s Resp., at 6.

## II.   STANDARD OF REVIEW

### A. Motion to Dismiss for Lack of Subject Matter Jurisdiction

"Article III of the Constitution prescribes that '[f]ederal courts are courts of limited subject-matter jurisdiction' and 'ha[ve] the power to decide only those cases over which Congress grants jurisdiction.'" *Bronner v. Duggan*, 962 F.3d 596, 602 (D.C. Cir. 2020) (alterations in original) (quoting *Al-Zahrani v. Rodriguez*, 669 F.3d 315, 317 (D.C. Cir. 2012)); *see Gunn v. Minton,* 568 U.S. 251, 256 (2013) ("'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994))). Federal courts therefore have a corresponding "independent

---

[1] The filing of a response to a party's reply is a discretionary privilege unafforded by the Rules of Procedure and plaintiff did not request nor was granted leave to file such a response. Nonetheless, in considering a motion to dismiss, this Court must read the *pro se* filings *in toto*. *Brown v Whole Foods Market Group, Inc*., 789 F.3d 146, 151–52 ("a district court errs in failing to consider a *pro se* litigant's complaint 'in light of' all filings, including filings responsive to a motion to dismiss"). Therefore, plaintiff's response and all other filings submitted are considered in resolving the pending motions.

obligation to ensure that they do not exceed the scope of their jurisdiction" and "must raise and decide jurisdictional questions that the parties either overlook or elect not to press." *Henderson v. Shinseki*, 562 U.S. 428, 434 (2011).  Absent subject-matter jurisdiction over a case, the court must dismiss it.  *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506–07 (2006) (citing *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004)); FED. R. CIV. P. 12(h)(3).

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), the plaintiff bears the burden of demonstrating the court's subject-matter jurisdiction over the claim at issue. *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015); *see also Hertz Corp. v. Friend*, 559 U.S. 77, 96–7 (2010); *Thomson v. Gaskill*, 315 U.S. 442, 446 (1942). When considering a motion to dismiss under Rule 12(b)(1), the court must accept as true all uncontroverted material factual allegations contained in the complaint and "'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged' and upon such facts determine jurisdictional questions."  *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (citations omitted) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)).  The court need not accept inferences drawn by the plaintiff, however, if those inferences are unsupported by facts alleged in the complaint or amount merely to legal conclusions. *See Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).

B.  **Motion to Dismiss, or Alternatively to Transfer, for Improper Venue**

Under Federal Rule of Civil Procedure 12(b)(3), a party may move to dismiss a case for improper venue.  Similarly, the federal venue statute, 28 U.S.C. § 1406(a), requires that a district court "dismiss, or if it be in the interest of justice, transfer" a case, which is filed "in the wrong division or district." Together, "Section 1406(a) and Rule 12(b)(3) allow dismissal only when venue is 'wrong' or 'improper' . . . in the forum in which [the case] was brought." *Atl. Marine*

*Constr. Co. v. U.S. Dist. Court*, 571 U.S. 49, 50 (2013). "Whether venue is 'wrong' or 'improper' depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws[.]" *Id.*

The moving party objecting to venue must provide "sufficient specificity to put the plaintiff on notice of the defect" that the case fails to fall within one of the three categories set out in section 1391(b). 14D Charles Alan Wright, *et al.*, FED. PRACTICE AND PROCEDURE § 3826 at 496 (4th ed. 2013). Nonetheless, the burden remains on the plaintiff to establish that venue is proper since it is " 'the plaintiff's obligation to institute the action in a permissible forum . . .' " *Williams v. GEICO Corp.*, 792 F. Supp. 2d 58, 62 (D.D.C. 2011) (quoting *Freeman v. Fallin*, 254 F. Supp. 2d 52, 56 (D.D.C. 2003)); *see also Ananiev v. Wells Fargo Bank, N.A.*, 968 F. Supp. 2d 123, 129 (D.D.C. 2013) (citing 14D Charles Alan Wright, *et al.*, FED. PRACTICE AND PROCEDURE § 382, at 502, 505–06) ("[W]hen [an] objection has been raised, the burden is on the plaintiff to establish that the district he [or she] chose is a proper venue [,] . . . consistent with the plaintiff's threshold obligation to show that the case belongs to the particular district court in which the suit has been instituted.")).

In assessing a motion for improper venue, the court "'accepts the plaintiff's well-pled factual allegations regarding venue as true, draws all reasonable inferences from those allegations in the plaintiff's favor and resolves any factual conflicts in the plaintiff's favor.'" *McCain v. Bank of Am.*, 13 F. Supp. 3d 45, 51 (D.D.C. 2014), *aff'd sub nom.*, *McCain v. Bank of Am. N.A.*, 602 Fed. Appx. 836 (D.C. Cir. 2015) (quoting *Wilson v. Obama*, 770 F. Supp. 2d 188, 190 (D.D.C. 2011)) (other citations omitted); *see also Darby v. U.S. Dep't of Energy*, 231 F. Supp. 2d 274, 276 (D.D.C. 2002)). "The Court, however, need not accept the plaintiff's legal conclusions as true, and may consider material outside the pleadings, including undisputed facts evidenced in the record, to determine whether it has jurisdiction in the case." *Ananiev*, 968 F. Supp. 2d at 129 (quoting

*Ebron v. Dep't of Army*, 766 F. Supp. 2d 54, 57 (D.D.C. 2011) (citing *Jerome Stevens Pharm., Inc. v. Food & Drug Admin.*, 402 F.3d 1249, 1253 (D.C. Cir. 2005); *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003); *Herbert*, 974 F.2d at 197; *Haley v. Astrue*, 667 F. Supp. 2d 138, 140 (D.D.C. 2009))).

### III.   DISCUSSION

Defendants contend that sovereign immunity bars all claims in this matter.  Defs.' MTD Mem. at 2–5.  The doctrine of sovereign immunity proscribes lawsuits for money damages against the United States, its agencies, and its employees in their official capacity, absent a specific waiver by the federal government. *Block v. North Dakota ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 287 (1983); *see also FDIC v. Meyer*, 510 U.S. 471, 475 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit.") (citations omitted); *United States v. Mitchell*, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."); *Shuler v. United States*, 531 F.3d 930, 932 (D.C. Cir. 2008) (quoting *Gray v. Bell*, 712 F.2d 490, 506 (D.C. Cir. 1983)) ("'The United States is protected from unconsented suit under the ancient common law doctrine of sovereign immunity.'"). Section 1346(b) of the United States Code "grants the federal district courts jurisdiction over a certain category of claims for which the United States has waived its sovereign immunity and rendered itself liable." *FDIC v. Meyer*, 510 U.S. at 477 (citation, internal quotation marks, and alteration omitted). Defendants are partially correct.

### A.   Claims against the Secretary of Treasury Are Barred By Sovereign Immunity

Plaintiff has named the Secretary of the Treasury as a defendant in this lawsuit even though Congress has only waived sovereign immunity in tax refund suits brought against the United States. 26 U.S.C. § 7422(f)(1); *Nix El v. Internal Revenue Serv.*, 233 F. Supp. 3d 65, 67 (D.D.C. 2017); *accord Laukus v. United States*, 691 F. Supp. 2d 119, 132 (D.D.C. 2010), *aff'd*, 442 Fed.

Appx. 570 (D.C. Cir. 2011).  Plaintiff "concedes this point" and agrees that the United States "is the only proper defendant." Pl.'s Mot. To Amend ¶ I.  Although plaintiff initially requested leave to amend "to name the United States as defendant[,]" *id.*, he has already named the United States as a defendant to this suit, *see* Compl. at caption, p. 1, and subsequently acknowledged the futility of the proposed amendment, *see* Pl.'s Resp. at 4.  Therefore, plaintiff's motion for leave to amend and substitute is denied as moot.

Moreover, to the extent that plaintiff purports to seek monetary damages separate and apart from his claim for refund, any such demand would be legally barred.  Absent a waiver, any official capacity claim against the Secretary of Treasury fails on the basis of sovereign immunity. *See Clark*, 750 F.2d at 103. Such a waiver of sovereign immunity "must be unequivocally expressed in statutory text, and [it cannot] be implied." *Lane v. Pena*, 518 U.S. 187, 192 (1996) (citations omitted).  Plaintiff here has neither pleaded nor established that the Secretary of Treasury has expressly consented to damages suit.

For these reasons, defendants' motion to dismiss all claims against the Secretary of Treasury is granted.

**B. Claims Against the United States May Not Be Barred**

Prior to filing a lawsuit for tax refund, a "taxpayer must comply with the tax refund scheme established in the Code," which provides that "a claim for a refund must be filed with the Internal Revenue Service (IRS) before suit can be brought, and establishes strict timeframes for filing such a claim." *United States v. Clintwood Elkhorn Min. Co.*, 553 U.S. 1, 4 (2008); *see also* 26 § 6511(b)(1).  Section 6511 establishes a filing deadline, requiring a taxpayer to file a claim for a refund "within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later, or if no return was filed by the taxpayer, within 2 years

7

from the time the tax was paid." 26 U.S.C. § 6511(a); *see C.I.R. v. Lundy*, 516 U.S. 235, 239–40 (1996).

"Although [courts] should not construe such [ ] time-bar provision[s] unduly restrictively, [they] must be careful not to interpret [them] in a manner that would extend the waiver [of sovereign immunity] beyond that which Congress intended." *United States v. Dalm*, 494 U.S. 596, 608 (1990). Authority dictates that "unless a claim for refund of a tax has been filed within the time limits imposed by § 6511(a), a suit for refund . . . may not be maintained in any court." *Clintwood Elkhorn*, 553 U.S. at 5. Accordingly, courts may not "toll, for non-statutory equitable reasons, the statutory time . . . limitations for filing tax refund claims set for in [§ 6511]." *United States v. Brockamp*, 519 U.S. 347, 348 (1997).

Here, plaintiff seeks a refund of his "federal income tax withholding for the taxable years 1993 through 1999." Compl. at 1. Since he does not claim to have filed a tax return for those years, the relevant statute of limitations runs two years from the date of payment. *See* 26 U.S.C. § 6511(a). Withheld federal income taxes are deemed "paid" for purposes of Section 6511(a) on April 15 of the year following the taxable year. *See* 26 U.S.C. § 6513(b)(1); *see also Baral v. United States*, 528 U.S. 431, 435–36 (2000). Plaintiff seeks a refund of his income tax withholding for six consecutive years, the earliest of which was deemed paid on April 15, 1994, and the latest of which was deemed paid on April 15, 2000. Therefore, plaintiff filed his claim for refund well-beyond the two-year statute of limitations as to all the relevant taxable years. Even if the more generous three-year statute of limitations were applicable, plaintiff would have filed his claim for refund more than *fifteen years* beyond the deadline for the *most recent* taxable year. *See* 26 U.S.C. § 6511(a).

Plaintiff does not dispute his failure to seek a refund within two years of the relevant taxable years. *See* Compl. ¶ 7; Pl.'s Opp'n ¶ II; Pl.'s Resp. at 2–4. Nonetheless, he contends that the statute of limitations was tolled due to his financial disability. *See id.* Section 6511(h) does, in fact, provide for statutory tolling of the statute of limitations in limited circumstances. *See* 26 U.S.C. § 6511(h). More specifically, the time limit for submitting a claim to the IRS "shall be suspended during any period of [an individual taxpayer's] life that such individual is financially disabled." *Id.* at § 6511(h)(1). An individual is considered "financially disabled" if he is "unable to manage his financial affairs by reason of a medically determinable physical or mental impairment of the individual which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 6511(h)(2)(A).

Defendants contend that, per his own allegations, plaintiff was only financially disabled from 1993 through 1999, meaning that his financial disability ended in 1999. Defs.' MTD Mem. at 5; Defs.' Reply, at 2–3, ECF No. 11.[2] They assert that, because the statute is only suspended *during* the period of financial disability and not thereafter, "the statute of limitations began running again [in 1999] and Plaintiff had, at the very latest, until 2002 or 2003 to file his claim for a refund. § 6511(a)." Defs.' MTD Mem. at 5. While the record makes clear, as defendants concede, that plaintiff explicitly alleges that he endured a financial disability from 1993 through 1999, Compl. at 1, *id.* ¶ 7; Pl.'s Opp'n at 2, less clear is when, if at all, plaintiff's alleged financial disability ended. Plaintiff alleges, in the present tense, "that he *suffers* from a financial disability." Compl. at introduction, p. 1 (emphasis added). His subsequent filings clarify that his mental health issues "are ongoing and unlikely to have suddenly reversed course and continue[] to [] date." Pl.'s Opp'n ¶ II. In support, he references his involuntary commitment and continuing psychiatric treatment.

---

[2]   On November 20, 2019, defendants filed a combined reply to plaintiff's (1) opposition to motion to dismiss, and; (2) motion for leave to amend and substitute, which reply was docketed twice, at ECF Nos. 11 and 12.

*See id*.; Pl.'s Resp. at 2–4. He also attests that "no other person was authorized to act on plaintiff's behalf[,]" Pl.'s Opp'n ¶ II, ostensibly, in regard to his finances.

In response, defendants counter that, without more, a diagnosed mental health condition is not necessarily equivalent to the "financial disability" contemplated by statute. Defs.' Reply at 2. (citing Rev. Prec. 99-21 § 4). The governing regulation, Revenue Procedure 99–21, "sets forth in detail the 'form and manner' in which proof of financial disability must be provided," *Bova v. United States*, 80 Fed. Cl. 449, 455 (2008), and requires that a claimant include:

> (1) a written statement by a physician (as defined in § 1861(r) (1) of the Social Security Act, 42 U.S.C. § 1395x(r)), qualified to make the determination, that sets forth: (a) the name and a description of the taxpayer's physical or mental impairment; (b) the physician's medical opinion that the physical or mental impairment prevented the taxpayer from managing the taxpayer's financial affairs; (c) the physician's medical opinion that the physical or mental impairment was or can be expected to result in death, or that it has lasted (or can be expected to last) for a continuous period of not less than 12 months; (d) to the best of the physician's knowledge, the specific time period during which the taxpayer was prevented by such physical or mental impairment from managing the taxpayer's financial affairs; and (e) the following certification, signed by the physician: I hereby certify that, to the best of my knowledge and belief, the above representations are true, correct, and complete. (2) A written statement by the person signing the claim for credit or refund that no person, including the taxpayer's spouse, was authorized to act on behalf of the taxpayer in financial matters during the period described in paragraph (1)(d) of this section. Alternatively, if a person was authorized to act on behalf of the taxpayer in financial matters during any part of the period described in paragraph (1)(d), the beginning and ending dates of the period of time the person was so authorized.

Rev. Proc. 99–21 § 4.

Certainly, "the fact of [the plaintiff's] incarceration alone is not "a medically determinable physical or mental impairment." *Lai v. Ipson*, No. 1:09–CV–02086 (AWI) (GSA), 2010 WL 843259 at *6–*7 (E.D. Cal. Mar. 10, 2010) (citing Rev. Proc. 99–21 § 4 and *Webb v. United States*, 66 F.3d 691, 701 (4th Cir.1995)). The current state of the record raises significant questions about

whether plaintiff has complied with Revenue Procedure 99–21.  In his response, plaintiff attaches a 2001 report from his treating physician, *see* BOP Med. Eval., which he admits lacks certain pieces of information required by the regulation, *see* Pl.'s Resp. at 2, but argues that this information is nonetheless adequate for purposes of this suit, *id.* at 2–4.  At the same time, plaintiff does not indicate if he actually submitted this particular medical report with his 2019 refund claim or if this report was introduced for the first time in this lawsuit.  Moreover, the basis of the IRS's denial of plaintiff's claim for refund is murky as to whether this denial was predicated on failure to comply with applicable limitations periods, deficiencies in plaintiff's proof of financial disability, on the merits, or for some other reason entirely.  Plaintiff states that "the Treasury Secretary did not reject the 2019 letter []or provide plaintiff with a notice of deficiency[,]" *id.* at 4, which underscores the inadequacy of the current record in evaluating defendants' assertion that plaintiff's claim for a refund is time-barred.

Therefore, defendants' motion to dismiss the tax refund claim against the United States is denied, without prejudice.

### C. Venue

Defendants argue that, if not dismissed for want of subject matter jurisdiction, the complaint should be dismissed for improper venue, pursuant to Federal Rule of Civil Procedure 12(b)(3), or transferred, pursuant to 28 U.S.C. § 1406(a).  Defs.' MTD Mem. at 5–6. Venue is indeed improper in the District of Columbia because suits against the United States for recovery of any tax "may be prosecuted only . . . in the judicial district where the plaintiff resides." 28 U.S.C. § 1402(a)(1).  Here, plaintiff admits that "at all times relevant to this action [he has] been a resident of Wisconsin and California and Georgia," Compl. ¶ 3, and that he is not, and has never been, a resident of the District of Columbia, Pl.'s Opp'n at 1; Pl.'s Mot. To Amend at 1, *id*. ¶ 2,

*id*. at 3; Pl.'s Resp. at 4–5. Consequently, he concedes that venue here is improper and consents to transfer of his case to the appropriate venue. Pl.'s Opp'n at 1. Thus, as to the surviving tax refund claim against the United States, venue in this District is improper, *see* 28 U.S.C. § 1402(a)(1), and, in the interest of justice, this claim must be transferred to an appropriate district court.

Defendants urge transfer of this matter to the District of Minnesota, where plaintiff "maintains a Bureau of Prisons address." Defs.' MTD Mem. at 5. In this Circuit, for venue purposes, a prisoner "resides" where he is incarcerated. *See In re Pope*, 580 F.2d 620, 622 (D.C. Cir. 1978) (*per curiam*) (citation omitted); *Void–El v. O'Brien*, 811 F. Supp. 2d 255, 260 (D.D.C. 2011); *Zakiya v. United States*, 267 F. Supp. 2d 47, 58–59 (D.D.C. 2003). This is not the law, however, in the Eighth Circuit, in which the District of Minnesota is located. *See Brimer v. Levi*, 555 F.2d 656, 658 (8th Cir. 1977) (*per curium*) (finding that a federal prisoner's incarceration in Missouri was involuntary, temporary, and not tantamount to residency). Thus, the District of Minnesota would likely not agree that this case "could have been brought" there, *see* 28 U.S.C. § 1406(a), and therefore transferring this case to that venue "is not a desirable option," *Jones v. United States*, 820 F. Supp. 2d 58, 61–2 (D.D.C. 2011) (finding that the Eastern District of Virginia was not desirable venue for transfer, even though prisoner was incarcerated in Eastern District of Virginia at time he filed suit, as the Fourth Circuit had not yet decided whether prisoners resided in district where incarcerated).

Transfer is proper to the Northern District of Georgia.[3] Plaintiff states that, at times relevant to this matter, he was a resident of Georgia. Compl. ¶ 3. He also seemingly intends to

---

[3] Like the Eighth Circuit, the Eleventh Circuit, in which the Northern District of Georgia is located, has determined that a prisoner's location of incarceration is not considered his residence for purposes of venue. *See Ellingburg v. Connet*, 457 F.2d 240, 241 (5th Cir.1972) (holding that for purposes of venue, a prisoner does not change his residence to the prison by virtue of being incarcerated); *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*)(same); *Urban Indus., Inc. of Ky., v. Thevis*, 670 F.2d 981, 986 (11th Cir. 1982) (concluding that prisoner retained his Georgia residence despite his incarceration in Indiana). Thus, this case "could have been brought" in the Northern District of Georgia. 28 U.S.C. § 1406(a).

rely on medical information and opinion presented at his criminal trial, which was litigated in that District. *See generally*, *Wattleton*, 1296 F.3d at 1187; *see also* Pl.'s Opp'n ¶ II; Pl.'s Resp. at 2; Pl.'s Mot. to Proceed IFP at 3, ECF No. 2. Additionally, the public record of that criminal case indicates that plaintiff worked and resided in or near Atlanta, Georgia, immediately prior to his civil commitment to federal custody. *See, e.g., Wattleton*, 296 F.3d at 1187; *id*. at 2000 WL 33991172 at *3–*4 (C.A.11) (Br. of Appellant) (filed Nov. 6, 2000); *id*. at 13802001 WL 34314739 at *4–*5, *7–*8 (C.A.11) (Br. of Appellee) (filed Jan. 11, 2001).[4] Therefore, plaintiff's remaining claim will be transferred to the Northern District of Georgia.

IV. **CONCLUSION**

For the foregoing reasons, defendants' motion to dismiss is granted as to all claims against the Secretary of Treasury and denied without prejudice as to plaintiff's claim, under 26 U.S.C. § 7422, for a tax refund against the United States. The surviving claim will be transferred in the interest of justice to the Northern District of Georgia. Plaintiff's motion for leave to amend and substitute is denied as moot.

An order consistent with this memorandum opinion will be issued contemporaneously.

_____/s/_____
BERYL A. HOWELL
Date:  July 30, 2020                        Chief United States District Judge

---

[4] This Court may take judicial notice of documents outside the pleadings to assure itself that the exercise of jurisdiction is proper. *See Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947); *Haase*, 835 F.2d at 906; *see also Artis v. Greenspan*, 223 F. Supp. 2d 149, 152 (D.D.C. 2002) ("A court may consider material outside of the pleadings in ruling on a motion to dismiss for lack of venue, personal jurisdiction or subject-matter jurisdiction.").